LACOMBE, Circuit Judge
(after stating the facts). The questions properly coming up for decision on this hearing are not as comprehensive as was supposed when the case was argued. If, upon examination of the record, it should appear that there was legal evidence •of facts before the commissioner on which to exercise his judgment us to the criminality of the accused; that the commissioner reached the conclusion that the accused had committed any one of the several offenses with which he was charged; and that offense be one covered by the extradition treaty,—sufficient warrant for his detention is shown, and he should not be discharged from custody, but should be held in jail until the secretary of state shall act upon the question of his surrender to the demanding government, or until the expiration of the time provided for in section 5273, Rev. St. U. S. In re Stupp, 11 Blatchf. 124, Fed. Cas. No. 13,562. Without unnecessarily burdening this memorandum with citation, it will be sufficient to refer to Ornelas v. Ruiz, 161 U. S. 502, 16 Sup. Ct. 689, for an exhaustive statement of the procedure in extradition cases, and the extremely limited functions to be discharged by the court upon habeas corpus and certiorari to review commitment.
That forgery at common law, viz. the falsely making or altering a document to the prejudice of another, is one of the offenses covered by the treaty of extradition, is not disputed. The evidence before the commissioner disclosed the following facts: Bryant was employed *284 as bookkeeper and assistant cashier with the firm of Morison & Marshall, in the city of London, from January to October, 1896, at a salary of £104 per annum. He bad under his control the check books and the checks returned from bank after payment. He was not authorized to sign the firm’s name to any checks. The firm kept an account with the London office of the Commercial Bank of Scotland. On June 23, 1896, a check for £500, purporting to be drawn on the Commercial Bank, and to be signed by Morison & Marshall, and numbered 698, was presented for payment by the Provincial Bank of England, paid, and debited to Morison & Marshall. On August 14, 1896, a like check for £500, numbered 54,264, was presented by the Provincial Bank, paid, and debited. And on September 10, 1896, a third like check, £720, numbered 54,373, was presented by the Provincial Bank, paid, and debited. Bryant kept an account with the Provincial Bank, in which he deposited on June 22, 1896, a check for £500, on August 13, 1896, a check for £500, and on September 9,1896, a check for £720. The proceeds of these three checks were duly credited to Bryant’s account and the greater part thereof subsequently drawn out by Mm. The three checks which were paid by the Commercial Bank were abstracted from two check books, which were not in use at the time, and were accessible to Bryant. Ho particulars appear on the counterfoil of the book from which they were taken. Hor are there any particulars of such checks entered on the counterfoils of any check books in use, nor are these checks now to be found among those received back from the bank in the ordinary way. Morison & Marshall had a sum exceeding £5,000 carried to the credit of a suspense account in their ledgers. Bryant had no authority to interfere with this account. He, however, brought £2,000 from such suspense account to the credit of a fictitious account which he opened in the ledger, in the name of T. H. Horth. Against this sum of £2,000 he debited the following amounts, viz.: £780 and £1,220. The £780 was posted in the ledger from the cash book, and consisted of £280 and the £500 represented by check Ho. 698. The £1,220 was in respect of the checks Ho. 54,364, for £500, and Ho. 54,373, for £720. These amounts Bryant did not carry out in the cash column of the cash book, but, in order that the balances of the ledger, cash book, and bankers’ pass book should agree, added the sum of £1,220 to the total, at the bottom of the page, notwithstanding that amount was not in the column, nor was there any entry in the cash book relating to the £1,220 which could be posted to Horth’s fictitious account.
This court most certainly cannot say in view of this proof, circumstantial though it be, that there was no legal evidence upon which the commissioner could properly exercise his judgment as to the guilt or innocence of the accused; and when, reaching the conclusion that the checks were false, he deems the evidence sufficient to sustain the charge of forgery, under the provisions of the treaty, and commits the accused to' await the action of the secretary of state, this court most certainly should not enlarge him upon habeas corpus. What action may be taken as to the form of Ms surrender is a matter for the disposition of. the executive.